IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CELIA ISAAC o/b/o JDM, Jr., a minor, : | |
|     Plaintiff, : | |
| v. : | CA 1:12-00097-C |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security, : | |
|     Defendant. : | |

## MEMORANDUM OPINION AND ORDER

The plaintiff brings this action on behalf of her son, JDM, Jr., a minor (*see* Doc. 1, ¶¶ 1-2), pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying an application for Supplemental Security Income ("SSI"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Doc. 21 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (Doc. 12), the plaintiff's brief (Doc. 13), the Commissioner's brief (Doc. 16), and the arguments presented at the October 4, 2012 Hearing (*see* Doc. 20), it is determined that the Commissioner's decision denying benefits should be **AFFIRMED**.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

**Procedural Background**

On December 2, 2008, the plaintiff filed an application for SSI on behalf of her son, alleging disability beginning November 13, 2008 (R. 151-153), due to attention-deficit hyperactivity disorder ("ADHD") (R. 158).[2] Her application was initially denied on May 18, 2009. (*See* R. 80). A hearing was then conducted before an Administrative Law Judge on May 18, 2010 (*see* R. 49-78). On June 2, 2010, the ALJ issued a decision finding no disability (R. 23-48), and the plaintiff sought review from the Appeals Council (*see* R. 21). The Appeals Council issued its decision declining to review the ALJ's determination on December 30, 2011 (*see* R. 1-6)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on February 17, 2012 (*see* Doc. 1).

**Standard of Review and Claim on Appeal**

In all Social Security appeals, even those involving benefits for an individual under the age of 18, such as this one, the task for this Court is to determine whether the ALJ's decision to deny benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129,

---

[2] The plaintiff filed two previous applications for SSI, which were both denied, in September, 2004 and March, 2007, respectively, and not further appealed. (*See* R. 52-53.)

131 (11th Cir. 1986).   Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."   *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).   And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence."   *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the plaintiff asserts a single reason for why the Commissioner's decision should be reversed: "[t]he ALJ [ ] erred in failing to find that [JDM, Jr.] meets Listing 112.05D."   (Doc. 13 at 1.)

## Discussion

The plaintiff contends that because "Listing 112.05D [was] implicated by [JDM, Jr.'s] available test scores" and the ALJ found JDM, Jr. suffers from a severe impairment, ADHD and borderline intellectual functioning ("BIF") (*see* R. 29), which, she contends, "establishes an additional mental impairment imposing additional and significant limitations of functioning[,]" thus "satisf[ying] the second prong of Listing 112.05D[,]" the ALJ committed reversible error by both failing to address Listing 112.05(D) in her decision and not finding that JDM, Jr. meets that Listing (Doc. 13 at 3).

An individual under the age of 18, like JDM, Jr. (born in 1999 (*see* R. 29)),

> is considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."   42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906.   The Social Security regulations establish a three-step process for determining whether a child is disabled.   20 C.F.R. § 416.924(a).   Under the first step, the ALJ considers whether the child has engaged in any substantial gainful activity.   *Id.*   At step two, the ALJ considers whether the child has an impairment or combination of impairments that is severe.   *Id.*   At step three, the ALJ must decide whether the child's impairment meets, medically equals, or functionally equals a listed impairment.   *Id.*

> In determining whether an impairment functionally equals a listed impairment, the ALJ must consider the child's ability to function in six different "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) "caring for yourself;" and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  If the child has "marked" limitations in two of these domains, or an "extreme" limitation in any one domain, then his impairment functionally equals the listed impairments, and he will be found to be disabled.  *Id.* § 416.926a(d).  A "marked" limitation is one that seriously interferes with the child's ability to initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(2)(i).  An extreme limitation is one that "very seriously" interferes with the child's ability to initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(3)(i).

*Coleman ex rel. J.K.C. v. Commissioner of Soc. Sec.*, 454 Fed. App'x 751, 752 (11th Cir. Dec. 9, 2011) (per curiam) (affirming an order of this Court affirming the ALJ's denial of SSI benefits for a minor child).[3]

Here, the ALJ determined that (1) JDM, Jr. has not engaged in substantial gainful activity since the alleged disability onset date, November 13, 2008 (R. 29) and (2) his ADHD and BIF are severe impairments (*id.*), but, at step three, concluded that (3) his severe impairments <u>neither meet or medically equal</u> an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1—specifically, Listing 112.11, which deals with ADHD[4]—<u>nor functionally equal</u> the listings (*id.* at 29-43).[5]

---

[3] "The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be ***severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience***.  In other words, a claimant who meets the requirements of a listed impairment will be deemed ***conclusively*** disabled."  *Johnson ex rel. Johnson v. Commissioner of Soc. Sec.*, No. 1:09–cv–967, 2011 WL 4954049, at *6 (W.D. Mich. Sept. 22, 2011) (noting that "[t]he structure of the mental disorders listing for children under the age of 18 parallels the structure of the mental disorders listings for adults, but is modified to reflect the presentation of mental disorders in children), *report & recommendation adopted*, 2011 WL 4954253 (W.D. Mich. Oct. 17, 2011) (citations omitted and emphasis added).

[4] "Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment."  *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 854 (8th Cir. 2003) (citing 20

> 1. **The ALJ did not err by not considering whether JDM's Jr. meets Listing 112.05(D) because the plaintiff has not shown that her son has a valid qualifying score.**

On appeal, the plaintiff contends that JDM, Jr.'s "working memory" score of 68, achieved when the state agency examiner, Dr. Bennett, administered the Wechsler Intelligence Scale for Children–IV ("WISC–IV"), should have triggered the ALJ to consider whether—and find that—JDM, Jr. met Listing 112.05(D), which, in part, requires that a claimant have a "valid verbal, performance, or full scale IQ of 60 through 70" (*see* Doc. 13 at 3 ("Despite Listing 112.05D being implicated by the available test scores, the ALJ did not address this Listing in her decision.  No explanation is provided.")).[6]  When questioned at oral argument about what a "working memory"

---

C.F.R. § 416.926(a)).  And, "[s]tanding alone, a diagnosis of ADHD does not establish a disability under the Act." *F.S. v. Astrue*, No. 1:10–CV–444 (MAD), 2012 WL 514944, at *10 (N.D.N.Y. Feb. 15, 2012) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)).

[5]  Whether a claimant's severe impairment(s) meets or medically equals a listing is an inquiry separate from whether his severe impairment(s) functionally equals a listing.  *See, e.g., F.S.*, 2012 WL 514944, at *4 ("Equivalence to a Listing can be *either* medical or functional.") (citing, *inter alia,* 20 C.F.R. § 416.924(d)) (emphasis added).  The determinations should not be conflated, and as the ALJ did here (*see* R. 29), separate findings should be made as to each. *Contra Brown ex rel. M.J.A.B. v. Astrue*, Civil Action No. 1:11cv859–TFM, 2012 WL 4896087, at *12 (M.D. Ala. Oct. 15, 2012) ("When determining that M.J.A.B. 'does not have marked limitations in two of the following: age-appropriate cognitive/communicative function; age-appropriate social functioning; age appropriate personal functioning; and concentration, persistence, or pace', the ALJ improperly conflated his assessment of whether M.J.A.B. *meets or medically equals* Listing 112.05 with a determination of whether he *functionally equals* the Listing.") (emphasis in original, record cite omitted).

[6]  While the plaintiff points to other seemingly low test scores in her brief (from testing administered by the Mobile County Public School System ("MCPSS") in September, 2008), the claimant's other WISC-IV scores, from the same administration, are above 70: Verbal Comprehension—89; Perceptual Reasoning—75; Processing Speed—91; and Full Scale IQ—76. (*Id.* at 2.)  *See also A.G. v. Lower Merion Sch. Dist.*, Civil Action No. 11–5025, 2012 WL 4473244, at *4 (E.D. Pa. Sept. 28, 2012) (noting that "the Wechsler Intelligence Scale for Children–IV ('WISC–IV') . . . measures a child's verbal comprehension, perceptual reasoning, working memory, processing speed, and full-scale intelligence quotient ('IQ')") (citation and internal quotation marks omitted).

score meant—specifically, whether a "working memory" score was the same as a verbal or performance IQ—counsel for the plaintiff advanced the position that, while the fourth edition of the WISC still provides a full scale IQ, it no longer provides a verbal IQ or performance IQ, that the regulations have not kept up with the testing protocol, and, as such, the Court should consider the "working memory" score of 68 as qualifying the claimant for consideration under Listing 112.05(D).

The Court rejects this position. First, "[t]he burden lies with the claimant to ***prove*** that he meets or equals a Listing." *Gray ex rel. Whymss v. Commissioner of Soc. Sec.*, 454 Fed. App'x 748, 750 (11th Cir. Dec. 8, 2011) (per curiam) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)) (emphasis added). And the plaintiff simply has not provided the Court with any support for the position that it should take JDM's Jr.'s "working memory" score of 68 to mean that he has a "valid verbal, performance, or full scale IQ of 60 through 70." Moreover, there is, in fact, authority to the contrary.

---

Further, as the ALJ explains in her findings (*see* R. 30-32), an expert witness, Dr. McKeown, testified that low scores achieved by JDM, Jr. in the September 19, 2008 MCPSS Testing (R. 306-319), including on the Woodcock and Kaufman tests, considered together with other record evidence, suggest that JDM, Jr. "functions in the borderline range" (R. 32):

> Dr. McKeown stated the claimant's adaptive living skills also show he is functioning in the borderline range. He opined the record as a whole does not support mild mental retardation as an impairment. He testified the claimant's Woodcock achievement levels were in the borderline range. In reference to the discrepancy between[ ] the claimant's 2008 achievement and Kaufman scores, Dr. McKeown stated the difference can reveal a learning disability, which is reflected by the claimant's ADHD treatment.

(*Id.*) Indeed, when they met to review the September, 2008 Testing, although JDM, Jr.'s IEP team discussed the possibility of mental retardation due to his low adaptive behavior scores, they "decided that SLD [specific learning disabilities was the] more appropriate placement." (R. 183-185.)

While "[t]he WISC-IV does not assess Verbal or Performance IQ" *per se*, *Mapps ex rel. M.J. v. Astrue*, No. 3:09–CV–2226–O–BH, 2010 WL 1946662, at *12 n.10 (N.D. Tex. Apr. 30, 2010), *report & recommendation adopted*, 2010 WL 1948363 (N.D. Tex. May 13, 2010), other scores reported by the WISC-IV are "equivalent to" verbal IQ and performance IQ.  As explained by the court in *Green ex rel. K.C.G. v. Astrue*, Civil Action No. 09–1028, 2011 WL 1440363 (M.D. La. Feb. 15, 2011), *report & recommendation adopted*, 2011 WL 1456218 (M.D. La. Apr. 14, 2011),

> while the previous version of the Wechsler, the WISC–III, reported scores as performance IQ, verbal IQ, and full scale IQ, as used by the Listing, the WISC–IV reports scores as "verbal comprehension," "perceptional reasoning," "working memory," "processing speed," and "full scale score."  The WISC–IV Administration and Scoring Manual instructs that the WISC–IV "Verbal Comprehension Index" is equivalent to Verbal IQ in the WISC–III and "Perceptional Reasoning" is equivalent to Performance IQ in the WISC–III:
>
>> Users of the WISC–III and previous Wechsler intelligence scales should note the change in terminology for the composite scores . . . .  The terms Verbal IQ (VIQ) and Performance IQ (PIQ) have been replaced with the terms Verbal Comprehension Index (VCI) and Perceptual Reasoning Index (PRI) respectively.

*Id.* at *4 (quoting David Wechsler, *WISC–IV Administration and Scoring Manual*, p. 4, The Psychological Corporation (2003)); *cf. Baldwin v. Astrue*, Civil Action No. 11–cv–01553–WYD, 2012 WL 2190836, at *4 n.1 (D. Colo. June 14, 2012).[7]

---

[7] There, the court, in a fairly recent decision, discussed the discrepancy between the Listings and the WISC noted by the plaintiff's counsel at oral argument:

> The current version of Listing 112.05C became effective September 20, 2000, and directly tracks the structure of the WISC–III.  The WISC–IV was released in 2003, and the Social Security Administration ["SSA"] has not updated the Listing to reflect the different scores reported by the new version of the test.  There is no information in this Record or in any of SSA's regulations or rulings that instructs how to translate the results of the WISC–IV into the scores needed to satisfy the Listing.  Consequently, in the event of a conflict between the WISC–

As noted previously, the plaintiff's argument fails because she has not carried her burden to show that the Court can rely on the claimant's WISC-IV "working memory" score of 68, *see id.*; moreover, given the Court's independent research into this issue, it appears that a "working memory" score is neither "equivalent to" a verbal IQ nor "equivalent to" a performance IQ, *see Green ex rel. K.C.G.*, 2011 WL 1440363, at *4. In fact, the claimant's scores that appear to be "equivalent to" verbal IQ (an 89 on "verbal comprehensive") and performance IQ (a 75 on "perceptual reasoning") are outside the range required by Listing 112.05(D).

> **2.   Even if JDM, Jr. possessed a valid qualifying score and although he has a severe impairment, the ALJ did not err by not considering Listing 112.05(D) because the plaintiff has not shown that her son meets all the requirements for that Listing.**

A qualifying "score and an accompanying severe impairment alone are not sufficient to satisfy Listing 112.05(D)." *Richard ex rel. Z.N.F. v. Astrue*, No. 11–30766, 2012 WL 2299479, at *2 (5th Cir. June 15, 2012) (per curiam); *Elliot v. Astrue*, No. 3:09–cv–985–J–JRK, 2011 WL 1230542, at *12 (M.D. Fla. Mar. 30, 2011) ("Plaintiff mistakenly assumes that there are only two requirements to meet Listing 112.05: (1) the IQ score requirement; and (2) the requirement of a physical or mental impairment."); *cf. Kine ex rel. Z.E.K. v. Astrue*, Civil Action No. 2:10cv751–MEF, 2012 WL 705336, at *5-6 (M.D. Ala. Feb. 13, 2012) ("On the whole, Z.E.K. is essentially arguing that, standing alone, his IQ scores establish a disability.   As a matter of law, they do not."), *report & recommendation adopted*, 2012 WL 695494 (M.D. Ala. Mar. 5, 2012).

---

III and WISC–IV (as in this case), it would appear that the WISC–III provides the most appropriate data for evaluating whether the claimant meets the Listing.

*Id.* at *4 n.1.

> A claimant satisfies Listing 112.05(D) if (1) his impairment is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning;" and (2) he has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* The first prong[,contained in the introductory paragraph,] is sometimes called the "capsule" requirement or the general diagnostic description that applies to all of [ ] Listing 112.05, while the second prong is one of several ways to satisfy the Listing's severity requirement.

*Richard ex rel. Z.N.F*, 2012 WL 2299479, at *2 (citing *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) ("[E]very mental disorder listing includes two independent components: a diagnostic description of the disorder and specific criteria measuring the disorder's severity.")); *see also Gray ex rel. Whymss*, 454 Fed. App'x at 750 ("[T]o be entitled to benefits, Gray must prove that her son meets both the requirements in the diagnostic description of the introductory paragraph and the listed severity criteria in 112.05D."); *Singleton ex rel. M.T.S. v. Astrue*, Civil Action No. 2:11cv512–CSC, 2012 WL 666098, at *4 (M.D. Ala. Feb. 29, 2012) ("[I]t is not sufficient to merely demonstrate an IQ score in the appropriate range and an additional physical or mental impairment. M.T.S. is also required to demonstrate that she has deficits in adaptive functioning sufficient to satisfy the diagnostic description in the introductory paragraph of § 112.05.").

First, on appeal, the plaintiff fails to meaningfully address whether JDM, Jr. meets the general diagnostic description/"capsule" requirement for Listing 112.05. She too "mistakenly assumes" that a purportedly qualifying score and a severe impairment obligate an ALJ to explicitly consider—and find—that a child meets the Listing. *Elliot*, 2011 WL 1230542, at *12. That is simply not the law in this Circuit.

"Although [an] ALJ must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination." *Gray ex*

9

*rel. Whymss*, 454 Fed. App'x at 750 (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).  Moreover, "[a] finding that a claimant's impairments are not contained in the Listings may be implied from [an] ALJ's decision."  *Id.*  In *Gray*, in which "the ALJ did not explicitly cite Listing 112.05D, [but, like the ALJ here,] found that [the child] did not meet one of the Listings" and "properly cited the three-step process[,]" the Eleventh Circuit affirmed the ALJ's decision, citing to "evidence in the record, the ALJ <u>*could have*</u> <u>used</u> to find that the child did not meet the listing—including (1) that the child's "IQ score of 66 was inconsistent with other evidence of his activities and behavior, and therefore was not conclusive[,]" *see Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("a valid IQ score need not be conclusive of mental retardation where the score is inconsistent with other evidence on the claimant's daily activities and behavior"), and (2) the child "did not have deficits in adaptive functioning."  454 Fed. App'x at 750 (emphasis added); *compare id.*, *with Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) (where, like here, an ALJ found that a child had the severe impairments of borderline intellectual functioning and attention deficit hyperactivity disorder, but had neither an impairment medically equal to a listed impairment nor impairments that resulted in marked limitations in any of the six functional domains, the court of appeals noted, "[a]lthough it is preferable" to do so, an ALJ's failure "to address [an] impairment in relation to the specific criteria of mental retardation, under listing 112.05(D)[,] . . . is not reversible error if the record supports the overall conclusion, as it [did] in [that] case") (citations omitted); *see also Jackson ex rel. K.J. v. Astrue*, 734 F. Supp. 2d 1343, 1365 n.17 (N.D. Ga. 2010) (noting that "the Eleventh Circuit has indicated that the ALJ's lack of discussion of a specific Listing at Step Three is not fatal to the ALJ's

decision") (citing *Turberville ex rel. Rowell v. Astrue*, 316 Fed. App'x 891, 893 (11th Cir. Feb. 18, 2009) (per curiam) ("We conclude that—though the ALJ did not explicitly discuss why Rowell did not actually meet Listing 112.05—substantial record evidence supports that Rowell's condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that Rowell was not disabled.")).

Here, the ALJ may not have addressed Listing 112.05(D) explicitly—possibly because, as explained above, although JDM, Jr. has the severe impairment of ADHD (which explains why the ALJ explicitly discussed Listing 112.11), he does not possess a valid score qualifying him for Listing 112.05(D)—but the record evidence clearly supports the conclusion that the claimant does not meet the Listing, and, moreover, the ALJ discussed this record evidence at length (for more than 13 pages (R. 29-43)), in considering whether JDM, Jr.'s impairments functionally equal the listings.  And the plaintiff has not challenged these functional findings.

## Conclusion

Based on the case law, as set out herein, and the Court's review of the ALJ's decision, specifically her extensive discussion of whether JDM, Jr.'s impairments functionally equal a Listing, it is clear that the decision is supported by substantial evidence.  It is therefore **ORDERED** that the decision of the Commissioner of Social Security denying the plaintiff benefits be **AFFIRMED**.

**DONE** this the 30th day of October, 2012.

> s/WILLIAM E. CASSADY
> **UNITED STATES MAGISTRATE JUDGE**